ANTHONY vs. LAWSON.

1. USURY: *How to avoid, in equity.*
   He who comes into a court of equity for relief against a judgment, conveyance, or other security, upon the ground of usury, must have paid or offered to pay what is really and *bona fide* due from him, in accordance with the maxim that he who seeks equity must do equity.

APPEAL from *Lonoke* Circuit Court in Chancery.
Hon. J. W. MARTIN, Circuit Judge.
*Hallum*, for appellants.
*Trimble* and *Chapline, contra.*

HARRISON, J. This was a suit in equity, by Philip Lee Anthony and L. M. Anthony, his wife, against Henry C. Lawson and C. L. Kline, to enjoin the sale of certain lands under a mortgage with power of sale.

Anthony vs. Lawson.

The plaintiffs alleged, in their complaint, that the lands, which were the separate property of the said L. M. Anthony, and of which there were about 1,770 acres, and worth $5,000—having been sold at a judicial sale for a grossly inadequate price, and the plaintiffs being allowed by the purchaser to redeem them by refunding to him the sum paid, they, on the fourteenth day of November, 1877, for that purpose, borrowed from the defendants $410 for thirty days, at six per cent. interest per month—for which they gave them their note, including therein the interest as part of the principal—and, as security for the note, a deed of trust upon the lands; that when the note fell due they paid $100 upon it; and, on the seventeenth day of December, 1877, gave to the defendant Lawson a new note, payable in thirty days, for $345.05—the balance, and interest on it at three per cent. per month, and executed to him a mortgage, with power of sale, on the lands to secure it— and took up the former note and deed; that Lawson assigned this latter note, before maturity, to the defendant Kline, who was conversant with the transaction, and knew that the usurious interest was included, in the note; and that the note having become due, Lawson was about to sell the lands under the power in the mortgage for its payment.

They made in their complaint no offer to pay the sum borrowed, with legal interest, or to pay anything.

The defendants demurred to the complaint, as not stating facts sufficient to constitute a cause of action. The court sustained the demurrer, and dismissed the complaint. The plaintiffs appealed.

Since the appeal was taken, Philip Lee Anthony has died, and the suit has been abated as to him.

It is a well settled and established rule, that he who

comes into a court of equity for relief against a judgment, conveyance, or other security, upon the ground of usury, must have paid, or offered to pay, what is really and *bona fide* due by him, in accordance with the maxim, that he who seeks equity must do equity. *Ruddell et al. v. Amble, 18 Ark., 369; Pickett et al. v. Merchants' National Bank of Memphis et al., 32 Ark., 346; Rogers v. Rathbun, 1 Johns. Ch., 367; Fanning v. Durham, 5 Johns. Ch., 122; Tiffany r. Boatman's Institution, 18 Wall., 375; 1 Story Eq. Ju., 64, e; Bisp. Eq., 222.*

But it is, however, insisted by the appellant, that as all contracts for a greater rate of interest than ten per cent. per annum are, by section 13, Article XIX, of the Constitution of the State, declared to be void, as to *principal and interest*, a court of equity now has no authority to require, as a condition of relief, that the plaintiff shall pay what he justly owes the defendant.

When the case of *Ruddell et al. v. Amble, supra,* was decided—the statute, *section 7, chap. 92, Gould's Dig.* (which has been re-enacted—*Act of February 9, 1875*), made all such contracts void, and except as an inhibition to the legislature to authorize a greater rate of interest, we are unable to see any more force in the constitutional provision than in the statute. The statute made them as wholly and entirely void as does the constitution.

The doctrine, as to the interposition of courts of equity to relieve against such contracts, is most clearly stated by Judge Story. He says: " In cases of usury, this distinction has been adopted by courts of equity. All such contracts being declared void by the statute against usury, courts of equity will follow the law in the construction of the statute. If, therefore, the usurer or lender come into a court of equity, seeking to enforce the contract, the court will refuse

any assistance, and repudiate the contract. But, on the other hand, if the borrower comes into a court of equity, seeking relief against the usurious contract, the only terms upon which the court will interfere, are, that the plaintiff will pay the defendant what is really and *bona fide* due to him, deducting the usurious interest, and if the plaintiff do not make such offer in his bill, the defendant may demur to it, and the bill will be dismissed. The ground of this distinction is, that a court of equity is not positively bound to interfere in such cases by an active exertion of its powers; but it has discretion on the subject, and may prescribe the terms of its interference; and he who seeks equity at its hands, may well be required to do equity. And it is against conscience that the party should have full relief, and, at the same time, pocket the money loaned, which may have been granted at his own mere solicitation. For then, a statute, made to prevent fraud and oppression, would be made the instrument of fraud. But, in the other case, if equity should relieve the lender, who is plaintiff, it would be aiding a wrong-doer, who is seeking to make the court the means of carrying into effect a transaction manifestly wrong and illegal of itself." *1 Story Eq. Jur., 301.*

There was no error in dismissing the complaint; but should the appellant yet tender the sum borrowed, with legal interest, she would, upon its refusal, be entitled to ask the aid of the court, and have the sale of the lands enjoined.

Affirmed.